IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ASHLEY FURNITURE INDUSTRIES, INC.,

                     Plaintiff,

    v.

PACKAGING      CORPORATION      OF
AMERICA, *et al.*,

                     Defendants.

OPINION AND ORDER

16-cv-469-wmc

---

Plaintiff Ashley Furniture Industries, Inc. alleges that defendants, vertically-integrated manufacturers of containerboard products, conspired to restrict output and raise prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. All but a single defendant move to transfer this case to the District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), asserting that this lawsuit is substantially related to a class action pending in that forum, from which the plaintiff here opted-out. (Dkt. #78.) The other defendant, Georgia-Pacific LLC ("Georgia-Pacific"), moves to sever and then transfer plaintiff's claims against it to the District of Delaware, pointing to a forum selection clause contained in its terms and conditions for sale. (Dkt. #63.) In response, plaintiff Ashley Furniture emphasizes its right to file and have the case decided in its home forum, along with its addition of specific claims under Wisconsin law and expansion of the alleged conspiracy period, arguing that each compel the denial of both motions. For other reasons explained below, the court will deny defendants' motions.

Plaintiff Ashley Furniture Industries, Inc. ("Ashley") is a Wisconsin corporation with its principal place of business in Arcadia, Wisconsin. During the period relevant to this lawsuit, plaintiff purchased containerboard and products made out of containerboard[2] directly from defendants, all of which manufacture and sell containerboard and containerboard products.[3] Plaintiff asserts that venue is proper in this district because a substantial part of the events giving rise to its antitrust claims occurred in this district by virtue of defendants' sales of containerboard to plaintiff.

More generally, plaintiff claims that defendants began conspiring in or around 2004 to restrict production of and to raise prices for containerboard products. Plaintiff alleges that defendants were able to carry out this conspiracy and charge supra-competitive prices through coordination facilitated by frequent gatherings sponsored by industry trade organizations. Plaintiff further asserts that the containerboard industry is vulnerable to collusive behavior, due to factors including the

---

[1] The following background facts are derived from plaintiff's second amended complaint (dkt. #95), undisputed representations in the parties' submissions regarding the motions to transfer and proceedings to date in the Northern District of Illinois.

[2] Containerboard is a material composed of linerboard (a "flat wood-fiber paperboard") and a corrugated medium made out of the same material as linerboard that is fluted and laminated, which are combined to make sheets that can be formed into products such as boxes and other containers. (Second Am. Compl. (dkt. #95) ¶ 29.)

[3] Defendant Georgia-Pacific LLC asserts that it "is a holding company separate from the GP operating businesses that actually produce or sell linerboard, medium, containerboard, or containerboard products," and offers that "it is prepared to make appropriate arrangements with Plaintiff's counsel for the substitution of the proper GP operating entities as defendants," but the parties treat Georgia-Pacific LLC as a proper defendant for purposes of the instant motions, and so will the court. (Def.'s Opening Br. (dkt. #73) at 1 n.1.)

commoditized nature of containerboard, inelastic demand for containerboard and the small number of containerboard manufacturers.

Defendants identify significant similarities between plaintiff's allegations in this case and the § 1 class action that is being actively litigated before Judge Leinenweber in the Northern District of Illinois, *Kleen Products LLC, et al. v. International Paper, et al.*, Case No. 1:10-cv-05711.[4] *Kleen Products* began as five putative class actions that were filed in 2010, and then consolidated upon the plaintiffs' motions into a single case originally assigned to Judge Shadur and then reassigned to Judge Leinenweber in 2012. (Defs.' Opening Br. (dkt. #79) at 3.)

Defendants represent that there have been more than 60 status hearings in *Kleen Products* and that discovery has been "extensive," including "dozens of written discovery requests, millions of pages of produced documents (or their electronic equivalents), and more than one hundred depositions, including at least ten third-party depositions." (*Id.* at 3-4.) Defendants also indicate that the parties' discovery disputes in *Kleen Products* generated seventeen motions to compel, requiring the Magistrate Judge to "overs[ee] two days of evidentiary hearings," as well as "conduct[] eleven status hearings and Rule 16 conferences with all parties, and facilitate[] three additional Rule 16 conferences between the plaintiffs and specific defendants." (*Id.* at 4.) In addition, defendants point out that Judge Leinenweber granted the *Kleen Products* plaintiffs' motion for class certification, which "spawned seven separate briefs that total more than 300 pages," in a 66-page

---

[4] Although defendant Georgia-Pacific does not join in the motion to transfer, the court refers to "defendants" for ease of reference, differentiating as to Georgia-Pacific only with respect to its separate motion to sever and transfer to the District of Delaware based on a forum selection clause.

opinion on March 26, 2015.[5] *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 588 (N.D. Ill. 2015). The Seventh Circuit affirmed Judge Leinenweber's decision on August 4, 2016. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016).

With respect to the similarities between this case and *Kleen Products*, defendants emphasize in their opening brief that: (1) much of plaintiff's complaint is identical to the *Kleen Products* pleadings, including excerpted examples of matching language; (2) plaintiff essentially alleges the same conspiracy period, 2004 to 2010; and (3) both cases name the same defendants, with the exception of changes reflecting "certain Defendants' corporate organization that post-date the class action complaint." (Defs.' Opening Br. (dkt. #79) 4-8.) Defendants acknowledge in their opening brief that plaintiff Ashley Furniture also asserts claims under Wis. Stat. § 133.14, but argue that the state law claims are largely immaterial to the transfer analysis, because "the legal standard is the same under either statute," while acknowledging that "the Wisconsin statute may in some circumstances permit certain forms of relief not available under the Sherman Act." (*Id.* at 8.)

Plaintiff filed a second amended complaint before the deadline established in the court's pretrial conference order to file amended pleadings without leave, and then filed a brief in opposition to defendants' transfer motion. The second amended complaint

---

[5] Plaintiff would argue that defendants' citations of the number of discovery disputes and hearings is somewhat misleading, since Judge Shadur "oversaw the first two years of that case," (Pl.'s Opp'n Br. (dkt. #96) at 10), but defendants highlight that Judge Leinenweber has "handled all motions" since Magistrate Judge Nolan retired in late 2012. (Defs.' Opening Br. (dkt. #79) at 12 n.7.) They further underscore that since late 2012, Judge Leinenweber "has presided over multiple motions to compel, numerous status hearings, a motion to amend the pleadings, settlement of certain defendants, and class certification." (Defs.' Reply Br. (dkt. #102) at 7 n.3.)

added several paragraphs of "post-2010" allegations suggesting that defendants' conspiracy lasted into 2013. While Ashley Furniture concedes in its opposition brief that "the plaintiffs in *Kleen Products* . . . assert a substantially similar federal antitrust claim against essentially the same defendants," plaintiff argues this case is different from *Kleen Products* "in two significant ways." (Pl.'s Opp'n Br. (dkt. #96) at 3.) First, plaintiff alleges claims under Wisconsin law, and second, plaintiff alleges a longer conspiracy period.

For its part, defendant Georgia-Pacific moves to sever plaintiff's claims against it under Federal Rule of Procedure 21, and then moves to transfer the severed action to the District Court for the District of Delaware to vindicate the forum selection clause included in its terms and conditions attached to the sale of its containerboard products. Specifically, that clause states that "the courts of Delaware shall have exclusive jurisdiction." (Decl. of Mary K. McLemore Ex. C (dkt. #75-3).) Plaintiff does not contest the validity of the forum selection clause, but rather argues that Georgia-Pacific's insistence that the forum selection provision significantly outweighs other factors typically considered regarding transfer is overblown, especially considering that plaintiff alleges a conspiracy involving Georgia-Pacific and the other defendants. The other defendants oppose Georgia-Pacific's motion on grounds similar to those raised in support of their transfer motion, namely that transfer of the entire action to the Northern District of Illinois would best serve judicial economy.

## OPINION

## I. Georgia-Pacific's Motion

Because the parties agree that § 1404(a) requires transfer of an action as a whole, *see Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 431 (E.D.N.Y. 2014), the court will first decide whether severance and transfer of plaintiff's claims against defendant Georgia-Pacific is warranted before addressing the remaining defendants' motion. Federal Rule of Civil Procedure 21 extends broad discretion to district courts to "sever any claim against a party." *See Rice v. Sunrise Exp., Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). When a party's motion to sever and transfer is principally based on a forum selection clause, as is Georgia Pacific's, courts have merged the relevant analyses under Rule 21 and 28 U.S.C. § 1404(a). *See Paduano*, 55 F. Supp. 3d at 431-32 ("In exercising that discretion [whether to grant a Rule 21 severance motion], courts typically consider the same general factors elucidating the § 1404(a) analysis. In other words, if the Court were to conclude that the pertinent factors render transfer appropriate under § 1404(a), then severance, too, would be proper.") (brackets omitted) (internal quotation marks and citations omitted) (quoting *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928 (D. Minn. 2014)); *see also Monje v. Spin Master Inc.*, No. CV-09-1713-PHX-GMS, 2013 WL 6498073, at *4 (D. Ariz. Dec. 11, 2013) ("Severance is a necessary precursor to . . . transfer, and it is justified by the same reasoning[.]"); *Atlantic Marine Contsr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. ___, 134 S. Ct. 568, 579 (2013) (holding that motions to transfer to another federal court pursuant to a forum selection provision are governed by § 1404(a)).

"For the convenience of the parties and witnesses [and] in the interest of justice,"
§ 1404(a) provides that "a district court may transfer any civil action to any other district
or division where it might have been brought or to any district or division to which all
parties have consented."   Courts deciding a § 1404(a) transfer motion, therefore,
typically "must evaluate both the convenience of the parties and various public-interest
considerations," ultimately deciding "whether, on balance, a transfer would serve the
convenience of the parties and witnesses and otherwise promote the interest of justice."
*Atlantic Marine*, 134 S. Ct. at 581 (internal quotation marks and citation omitted).
When the transfer motion is based on a valid forum selection clause between the parties,
this traditional § 1404(a) analysis is altered in three ways: (1) the plaintiff's choice of
forum deserves no weight; (2) the parties' private interests are immaterial; and (3) the
court should not weigh the transferee court's familiarity with the law dictated by the
transferor court's choice of law rules, since those rules would not follow along with a
transfer.  *Id.* at 581-82.  Consequently, the Supreme Court explained in *Atlantic Marine*
that "[w]hen the parties have agreed to a valid forum-selection clause, a district court
should ordinarily transfer the case to the forum specified in that clause.  Only under
extraordinary circumstances unrelated to the convenience of the parties should a §
1404(a) motion be denied."  *Id.* at 581.

The forum selection provision in the terms and conditions attached to sales of
Georgia-Pacific's corrugated products states as follows:

> These Terms and Conditions of Sale shall be governed by the
> laws of the State of Delaware, USA, and the courts of
> Delaware shall have exclusive jurisdiction without reference

> to the choice of law, conflicts of law, or principles of any
> other state or county which might otherwise be applied.

(Def.'s Opening Br. (dkt. #73) at 3 (quoting Decl. of Mary K. McLemore Ex. C (dkt. #75-3)).) Plaintiff does not contest the validity of this forum selection provision, but rather argues that the force of the Supreme Court's "extraordinary circumstances" requirement is satisfied here, because unlike *Atlantic Marine*, this case involves allegations of a multi-defendant conspiracy. In support, plaintiff cites several other cases in which district courts denied a single defendant's motion to sever and transfer where multiple other defendants were facing the same claims.

Raising the same concerns, the other defendants filed their own brief in opposition to Georgia-Pacific's motion,[6] echoing plaintiff's argument that "*Atlantic Marine* says *nothing* about forum-selection clauses in a case like this one, where multiple defendants who did not 'agree' to the clause oppose transfer to the specified forum." (Defs.' Opp'n Br. (dkt. #89) at 2 (emphasis in original).) Instead, defendants argue this court should apply the same factors that other courts have found important in deciding Rule 21 motions: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and

---

[6] Georgia-Pacific's argument that the other defendants lack standing to "challenge the enforceability of [its] forum selection clause with Ashley" (Def.'s Reply Br. (dkt. #103) at 7) is fruitless, since they do not challenge the clause's *enforceability*, but rather whether it should control over the other factors that they and plaintiff raise. In addition, the various authorities Georgia-Pacific cites in support of its argument are inapposite, since defendants are not purporting to raise improper venue arguments on behalf of Georgia-Pacific.

documentary proof are required for the separate claims." *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 862 (C.D. Ill. 2003). This court agrees, finding that all of these factors militate against severance, most of them strongly so.

Georgia-Pacific's reply underscores that the parties' central dispute centers around whether the Supreme Court's decision in *Atlantic Marine* dictates transfer. While *Atlantic Marine* "did a lot to clear up the law of forum selection," commenters have noted that the Supreme Court left important questions unanswered, including "[i]f the [forum selection] clause applies to only some parties or claims but not others, how should the court review a transfer motion?" Linda S. Mullenix, *Gaming the System: Protecting Consumers from Unconscionable Contractual Forum-Selection and Arbitration Clauses*, 66 Hastings L.J. 719, 721 (2014); *see also* Stephen E. Sachs, *Five Questions after Atlantic Marine*, 66 Hastings L.J. 761 (2014). Nor has the Seventh Circuit yet answered that question.

Even so, this court is not without persuasive guidance. The Fifth Circuit explained that "*Atlantic Marine* was premised on the fact that the parties had agreed in advance where their private litigation interests lie, and the reviewing court had no cause to disturb those expectations," but the transfer analysis is "more complicated" when "not all parties to the lawsuit have entered into a forum selection agreement." *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014). In the latter context, the Fifth Circuit concluded that "[a] litigant not party to such a contract did not, of course, make any such advance agreements and *their* private interests must still be considered by the district court." *Id.* (emphasis in original). This highlighted for the Fifth Circuit the tension between

"*Atlantic Marine* not[ing] that public factors, standing alone, were unlikely to defeat a transfer motion" and "that section 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute." *Id.* (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *U.S.O. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008)); *see also id.* at 680 (acknowledging the Fifth Circuit's own "jurisprudence suggest[ing] that the severance inquiry is different -- and more focused on judicial efficiency -- when it is combined with a section 1404 motion to transfer than when the severed case would remain in the original judicial district").

Accordingly, the Fifth Circuit adopted the following test:

> We are persuaded that the severance-and-transfer inquiry in situations where some but not all parties have entered into a forum selection clause ought go as follows: First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis. Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit. In so determining, the district court should consider whether there are procedural mechanisms that can reduce the costs of severance, such as common pre-trial procedures, video depositions, stipulations, etc. Such practices could echo those used by judges in cases managed pursuant to multidistrict litigation statutes.

*Rolls Royce,* 775 F.3d at 681 (footnotes omitted); *but see id.* at 685 (Jones, J., concurring) (disagreeing with the majority's test, including consideration of private factors, because "[i]t seems highly unlikely that the Supreme Court granted certiorari and awarded the

extraordinary relief of mandamus simply to proclaim that a forum selection clause must prevail only when one party sues one other party").

Certainly, the Fifth Circuit's analysis in *Rolls Royce* carries some weight, just as does the Supreme Court's pronouncement in *Atlantic Marine* that "a district court [deciding a motion transfer based on a valid forum selection clause] may consider arguments about public-interest factors only," which immediately followed the Court's explanation that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." 134 S. Ct. at 582. Moreover, *Atlantic Marine*'s adjustment of the traditional § 1404(a) analysis was predicated on the notion that "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). This explains why both the Supreme Court and the Fifth Circuit, even more explicitly, recognized that the interests of the contracting parties may be outweighed by the private interests of any defendants who did *not* similarly waive a challenge to an inconvenient forum.

Fortunately, Georgia-Pacific's motion here does not turn on the relative public weight assigned these competing private interests. Rather, the court is persuaded that public interest factors favoring all members of an alleged conspiracy to restrain trade be judged in one lawsuit weigh strongly against severance and, consequently, against the transfer of plaintiff's claims against Georgia-Pacific. Like the Fifth Circuit, the court does

"not read *Atlantic Marine* to mandate severance and transfer of a party bearing a forum selection clause in all multiparty cases, regardless of countervailing considerations of judicial economy." *Rolls Royce*, 775 F.3d at 677; *see id.* at 679 ("[T]he need -- rooted in the valued public interest in judicial economy -- to pursue the same claims in a single court can trump a forum-selection clause."); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2014 WL 1477748, at *2 (N.D. Cal. Apr. 14, 2014) (denying motion to transfer based on a forum selection clause that would "require [plaintiff's] claims against [one defendant] be tried separately from its substantially similar claims against the other defendants"); *Aquila v. Fleetwood, R.V., Inc.*, No. 12-CV-3281 (LDW)(GRB), 2014 WL 1379648, at *4-5 (E.D.N.Y Mar. 27, 2014) (denying motion to transfer based on a forum selection clause by a single defendant in "a case involving overlapping claims against multiple defendants" because of "the public interests in avoiding duplicative proceedings and potentially inconsistent results").

Generally, public interest factors "include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atlantic Marine* at 581 n.6 (brackets omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The parties do not argue that these classic public interest factors weigh significantly in either direction, nor does it appear to the court that they do. However, in view of *Atlantic Marine*'s recognition that "the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,'" *id.* at 581, it is also appropriate for the court to consider, "outside of the

traditional public interest factors, . . . [the] interest in efficiency and avoiding the possibility of multiplicity of litigation." *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *7 (N.D. Ill. Sep. 18, 2009).

Each of these factors favor denying Georgia-Pacific's motion, since otherwise it would mean litigating plaintiff's claims against it separately, while plaintiff would be simultaneously litigating in a different forum nearly identical claims against all of the other defendants, who are alleged to be co-conspirators to fix the price of containerboard products with Georgia-Pacific. Given the commonality (if not nearly identical nature) of the facts and the law applicable to plaintiff's claims against Georgia-Pacific and the other alleged co-conspirators, the judicial inefficiencies for which Georgia-Pacific's motion calls is not justified here by any countervailing public interest in enforcing the forum selection clause. *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("We have made quite clear that 'to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'") (brackets omitted) (quoting *Cont'l Grain*, 364 U.S. at 26); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system. . . . The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.") (citing *Van Dusen v. Barrack*, 376 U.S. 612, 626-27 (1964)).

The inefficiency is underscored by the fact that these same parties (including Georgia-Pacific) have been litigating essentially the same antitrust conspiracy claims in the Northern District of Illinois for several years, and are continuing to do so.[7] Georgia-Pacific also fails to convince the court that careful management of discovery could eliminate most of the judicial inefficiencies created by severance and transfer to a new judge in Delaware. Finally, the likelihood for inconsistent results would increase substantially should this court grant Georgia-Pacific's motion to sever and transfer.

Contrary to Georgia-Pacific's assertions then, the nature of plaintiff's antitrust conspiracy claims here, as well as the parties' long-standing relationship in the *Kleen Products* litigation, present just the "extraordinary circumstances" where the interests of justice do not support transfer pursuant to a narrow, private forum selection clause.[8] Accordingly, the court will deny Georgia-Pacific's motion.

## II. The Remaining Defendants' Motion

Perhaps it is needless to say that the reasons for denying Georgia-Pacific's motion similarly support granting the other defendants' § 1404(a) transfer motion. Since their transfer motion is not based on a forum selection clause, however, transfer is appropriate

---

[7] In fairness, that claim may be winding down with the defendants there, save Georgia-Pacific, and the class having a conditional settlement approved by the court, and Georgia-Pacific awaiting a ruling on its motion for summary judgment as the lone non-settling defendant remaining.

[8] As plaintiff points out, one of the cases on which Georgia-Pacific relies heavily, *Paduano*, is easily distinguishable. In that case, the district court noted that "unlike in *Aquila*, the decision whether to grant or deny the motion to sever and transfer, by itself, will have a marginal impact on judicial economy," because it was "duty-bound to refer [the plaintiff's] claims [against the remaining defendants] to arbitration." *Paduano*, 55 F. Supp. 3d at 435.

only if they demonstrate that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will (a) serve the convenience of the parties and witnesses and (b) promote the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The parties raise no disputes as to the first two factors, and so they focus, as will the court, on the convenience of the parties and the interests of justice.[9]

### A. Convenience of the Parties

When weighing how transfer will affect the convenience of the parties, courts consider factors including: (1) the plaintiff's choice of forum; (2) the convenience to parties; and (3) the convenience to witnesses. *Illumina, Inc. v. Affymetrix Inc.*, No. 09-CV-227-BBC, 2009 WL 3062786, at *2 (W.D. Wis. Sept. 21, 2009). As the moving party, defendants have the burden of establishing "that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20.

### 1. Plaintiff's Choice of Forum

A plaintiff's chosen forum is generally entitled to deference, particularly when the plaintiff chooses its home forum. *See Piper Aircraft Co.*, 454 U.S. at 255-56; *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

---

[9] Although the court addresses each factor separately, it keeps in mind the Seventh Circuit's instruction that "[§ 1404(a)] permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978 (quoting *Stewart*, 487 U.S. at 29).

disturbed.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Ashley's principal place of business is in Arcadia, Wisconsin, and so the Western District of Wisconsin is indeed plaintiff's home forum.

Defendants nevertheless argue that plaintiff's choice of forum deserves no deference, since the *Kleen Products* litigation is an "identical suit" in another venue. As plaintiff Ashley Furniture points out, however, the case defendants cite in support of this proposition actually concerned the application of the "first-to-file rule" to "mirror-image lawsuits in two different district courts [with] each [party] claiming the other had breached their contract for the manufacture and sale of an industrial cleaning machine." *Research Automation*, 626 F.3d at 975. While Ashley Furniture acknowledges that the case here presents a "substantially similar federal antitrust claim against essentially the same defendants" as in *Kleen Products* (Pl.'s Opp'n Br. (dkt. #96) at 3), the two cases are decidedly *not* "identical" in the sense that they were in *Research Automation*. *See* 626 F.3d at 980 ("a declaratory judgment action and a mirror-image action seeking coercive relief"). Moreover, Ashley Furniture exercised its right to *opt out* of that lawsuit to avoid being forced into a class resolution of its claim. Plaintiff's choice of this forum must, therefore, receive substantial deference.

## 2. Parties and Witnesses

Although this court is certainly more convenient for plaintiff, whose employees and witnesses plaintiff plausibly asserts are mostly located in Northern Wisconsin, defendants argue that transfer is nevertheless warranted because the Northern District of Illinois is more convenient for defendants, since they are all already defendants in the

*Kleen Products* class action and "already have counsel with substantial knowledge of the cases in that jurisdiction." (Defs.' Opening Br. (dkt. #79) at 15.) Of course, § 1404(a) references "the convenience of parties and witnesses," not counsel, but there is an obvious, potentially sizable cost to the defendants associated with bringing an entirely new cast of lawyers, not to mention a new judge, up to speed on a Section 1 conspiracy claim of this magnitude.[10] Even so, § 1404(a) does not require transfer where convenience is only shifted from the non-moving party to the moving party. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Moreover, defendants *witnesses* will be inconvenienced regardless of the forum because they are located in various parts of the country. Admittedly, even this is somewhat offset by the greater ease in traveling in and out of Chicago (at least by air).[11] Still, defendants fail to establish that the Northern District of Illinois is a clearly more convenient forum.

## B. Interest of Justice

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (internal citations omitted). "Factors traditionally considered in an 'interest of justice' analysis relate to the

---

[10] While the latter cannot be helped, the court views much of the retention of separate, local counsel for each defendant as a largely self-inflicted cost, even in a conspiracy case, since federal law will largely control, existing counsel for each defendant can continue to provide independent representation and the role of attorneys "on the ground" is of little value, except to advise of local court procedures.

[11] Even plaintiff's counsel located in Kansas City would likely find Chicago more convenient for this reason, and those in Milwaukee would find it a wash at best given the availability of train service.

efficient administration of the court system." *Id.* at 221.  Those factors typically include: (1) docket congestion and likely speed to trial in the transferor and transferee forums; (2) each court's familiarity with the relevant law; (3) the respective desirability of resolving the claims in each court; and (4) the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978.  In the same way that "the interest of justice may be served by transfer to a district where the litigants are more likely to receive a speedy trial," it may also be served by transferring "related litigation . . . to a forum where consolidation is feasible."  *Coffey*, 796 F.2d at 221.

Defendants do not respond to plaintiff's arguments that this court is more familiar with and has a greater interest in resolving plaintiff's claims for "full damages" under Wis. Stat. § 133.14, but given the substantial overlap between the determinations of liability under § 133.03 and the Sherman Act, those factors weigh against transfer to a very limited extent.[12]  *See Lerma v. Univision Communications, Inc.,* 52 F. Supp. 2d 1011, 1015-16 (E.D. Wis. 1999) (Wisconsin antitrust statute generally controlled by federal case law in light of its intended reenactment of the Sherman Act).  Plaintiff further asserts that cases tend to reach trial faster in this district than in the Northern District of Illinois (a median of 18.7 months to trial versus 32.6 months, respectively (Pl.'s Ex. 2 (dkt. #96-2))), but this factor also carries little weight here because, as defendants point out, the district-wide median time to trial statistics are "somewhat misleading," given that they include all cases before all judges in each district, and because Judge

---

[12] Unlike § 133.03, which essentially adopts the elements of an illegal antitrust conspiracy in the Sherman Act, plaintiff correctly points out that the civil remedies in § 133.14 differ in some material respects from its federal counterpart, but those differences are not so unique or significant to tilt the consolidation of these cases either way.

Leinenweber's familiarity with *Kleen Products* "may allow for a faster time to trial than the parties would otherwise receive in this court." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 14-cv-502-wmc, 2014 WL 6612881, at *5 (W.D. Wis. Nov. 20, 2014).

Determining the interests of justice, therefore, largely turns on whether judicial economy would be served by a transfer. Indeed, defendants' motion is premised almost entirely on judicial economy, citing *Ferens* for the proposition that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." 494 U.S. at 531 (brackets omitted) (quoting *Cont'l Grain*, 364 U.S. at 26). While this case may not present *precisely* the same issues as the *Kleen Products* class action from which plaintiff opted-out, the antitrust claims are without question "substantially similar." (Pl.'s Opp'n Br. (dkt. #96) at 3.)

Plaintiff argues that defendants overestimate the judicial economy to be gained from transfer because of the differences between this case and *Kleen Products*, particularly: (1) plaintiff's state law claim for "full payments" damages under Wis. Stat. § 133.14; (2) defendant Georgia-Pacific's Wisconsin state law counterclaim; and (3) the allegations that the conspiracy continued for an additional three years. However, the court again agrees with defendants that plaintiff overstates the differences between this case and *Kleen Products*.

To begin, § 133.14 provides for recovery of "[a]ny payment made upon, under or pursuant to" a "contract[] or agreement[] made by any person while a member of any

combination or conspiracy" in restraint of trade prohibited by Wis. Stat. § 133.03. As previously discussed, while the Wisconsin antitrust statutes provide for different types of recovery than the Sherman Act under some circumstances, any complexity that might be added by the addition of plaintiff's state law claim will likely be lessened, if not mooted, because Wisconsin courts traditionally look to federal law to interpret substantive violations of the Wisconsin antitrust statutes. *See, e.g., Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 970 (E.D. Wis. 1998) ("Wisconsin case law makes clear that federal court decisions construing the Sherman Act control application of Wisconsin antitrust law, including determination of what acts constitute a combination or conspiracy in restraint of trade.") (internal quotation marks and citations omitted); *State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 574, 261 N.W.2d 147 (1978) ("Except for the fact that the state act applies to intrastate commerce while the federal act applies to interstate commerce, what amounts to a conspiracy in restraint of trade under the Sherman Act amounts to a conspiracy in restraint under the Wisconsin antitrust act.")

As for the counterclaim, defendant Georgia-Pacific merely seeks recovery of unjust enrichment damages in the event that any sales agreements between it and plaintiff are found to be void as illegal under Wis. Stat. § 133.14. As a result, plaintiff would "inequitably retain" benefits "in the form of corrugated boxes." (Answer (dkt. #68) at 96-97.) Accordingly, plaintiff can neither plausibly assert that plaintiff's state law claims or Georgia-Pacific's counterclaim predominate over the principal disputes in this case under the Sherman Act, nor that any unique elements of the state law claims will be particularly difficult for a federal judge sitting outside this district to apply. *See Atlantic*

*Marine*, 134 S. Ct. at 584 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.").

This leaves plaintiff's added allegation in its second amended complaint that the price fixing conspiracy continued for an additional, three-year period, but this, too, fails to materially distinguish plaintiff's claims from those in *Kleen Products*. At most, the alleged continuation of the conspiracy will add limited nuance to the basic factual and legal issues with which Judge Leinenweber is already well familiar with regard to the 2004-2010 conspiracy period alleged in *Kleen Products*. Indeed, defendants have demonstrated persuasively that Judge Leinenweber's familiarity with those complex issues in the substantially similar *Kleen Products* class action after several years would minimize the relatively minor differences that plaintiff argues militate in favor of keeping its case separate. In addition, a failure to transfer while that case pends creates at least some risk of an inconsistent judgment.

Were the two litigations on a similar track, these possible efficiencies and risks of inconsistent results might be sufficiently strong to overcome plaintiff's limited inconvenience factors and even disrupt plaintiff's more substantial right to choose its own forum. Given that the *Kleen Products* litigation appears to be winding down for all defendants save Georgia-Pacific and WestRock CP, LLC, however, the promises of efficiencies and risks of inconsistent results are largely ephemeral. Indeed, it appears that Judge Leinenweber has already given preliminary or final approval to class action

settlements for all but three of the companies here (*Kleen Products*, Case No. 1:10-cv-05711 (dkt. ##734, 902, 1365)) and that a summary judgment decision is pending as to two of them, Georgia-Pacific and WestRock CP, LLC.[13] (*Kleen Products*, Case No. 1:10-cv-05711 (dkt. ##1086, 1088).)

Even if the final claims against Georgia-Pacific and WestRock CP, LLC, were to go forward to trial, that would likely happen before a trial will take place in this case. And while Judge Leinenweber no doubt has learned much about the containerboard industry, its products and marketplace, the bulk of his efforts have centered on class action issues, which for the most part will not be repeated here, *see Kleen Products*, 306 F.R.D. 585, and discovery and expert opinions on which this court can learn much to avoid reinventing the wheel. *See, e.g., Kleen Products LLC v. International Paper*, Case No. 1:10-cv-05711, 2017 WL 2362567 (N.D. Ill. May 31, 2017). Moreover, the court expects that the parties will agree to streamline discovery consisting largely of production of documents and deposition transcripts created as part of the *Kleen Products* lawsuit and orderly discovery from Ashley Furniture Industries pursued by all the defendants through a more discrete group of attorneys and law firms.

Finally, while there will obviously be a ramp-up period for me, the factual and legal issues in this lawsuit are hardly daunting, nor need be the expense of educating me on the essential facts and theories for what is essentially a claim of a *per se* illegal, antitrust conspiracy to restrain production and fix prices. Accordingly, defendants have

---

[13] The third company, WestRock RKT Company, which filed a motion to dismiss plaintiff's claims against it in this case (dkt. #119), does not appear to be a defendant in *Kleen Products*.

failed to meet their burden to establish that transfer of this case to the Northern District of Illinois is appropriate.

ORDER

IT IS ORDERED that defendant Georgia-Pacific's motion to sever and transfer (dkt. #63) and the other defendants' motion to transfer (dkt. #78) are DENIED;

Entered this 27th day of July, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge